Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

*QUI TAM ACTION*

CASE NO. **16-20842 CIV-SEITZ**

FILED by __FS__ D.C.

MAR 0 8 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA
*ex rel.* LAURIE ASTACIO,

      Plaintiff,

v.

FLORIDA TECHNICAL COLLEGE, INC., a
Florida corporation, and EDUK GROUP, INC.,
a Puerto Rican corporation,

      Defendants.

_____/

**MAGISTRATE JUDGE
TURNOFF**

## COMPLAINT
### *(Qui Tam Action Pursuant to False Claims Act)*

### I.    INTRODUCTION

1.     Relator, Laurie Astacio ("Relator"), through her counsel, Mase Lara, P.A., brings this action on her own behalf and on behalf of the Unites States of America to recover damages and penalties pursuant to the False Claims Act, 31 U.S.C. §3729 *et seq.*, against Defendants, Florida Technical College, Inc. ("FTC") and EduK Group, Inc. ("EduK") (collectively, the "Defendants"). The violations arise out of the Defendants' falsification of student information and records that allowed them and their students to apply for, qualify for, and obtain scholarship and grant money from the U.S. government, which they should not have received. Such actions violate state and federal law, including the Federal Higher Education Act of 1965.

2.     Ms. Astacio also brings a personal claim for retaliation in violation of the False Claims Act, 31 U.S.C. §3730(h), as well as claims for retaliation pursuant to §448.102, Fla. Stat.

2



Ms. Astacio objected to and notified multiple people at FTC and EduK, including her direct supervisor, of the wrongful conduct set forth herein.  Ms. Astacio was then harassed by her supervisors at FTC, and her employment at FTC was shortly thereafter terminated.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1331.

4.     Venue is proper in this District pursuant to 31 U.S.C. §3732(a) because the Defendants do business in Miami-Dade County, Florida.

## III.    PARTIES

5.     FTC is a Florida corporation.  FTC conducts business in Miami-Dade County, Florida.

6.     EduK is a Puerto Rican corporation.  EduK conducts business in Florida, including having employees located in Florida.  EduK is inextricably intertwined with the business operations of FTC.  For example, EduK provides human resource functions for FTC. According to EduK's website, FTC is one of the education companies owned and/or operated by EduK.[1]

## IV.     CONDITIONS PRECEDENT

7.     The facts and circumstances of the False Claims Act violations alleged in this Complaint have not been publicly disclosed in a criminal, civil or administrative hearing, nor in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

8.     Relator is the original source of the information upon which this Complaint is based, as that term is used in the False Claims Act.

---

[1] http://www.edukgroup.com/florida-technical-college (last visited February 2, 2016).



9.      Relator disclosed the allegations of this Complaint to the United States in accordance with the False Claims Act.

## V.      RELATED ENTITIES

10.      Leads Equity is a Delaware corporation.   Leads Equity works closely with management at EduK, and its institutional affiliate FTC, to "increase operational efficiency, drive growth and profitability and create long-term business value.[2]"  Leads Equity states that: "EduK operates through four education systems that are certified by the United States Department of Education to participate in Title IV programs pursuant to the Federal Higher Education Act of 1965, as amended…FTC offers diplomas, associate's and bachelor's degrees at 6 locations across a variety of fields…[3]"  Accordingly, Leads Equity in inextricably intertwined with FTC's policies, procedures and actions at issue in this case, including FTC's operations and drive for growth and profitability.

11.      Leads Advisors is a Delaware corporation.   Leads Advisors is believed to be a wholly owned subsidiary of Leads Equity.  FTC states that it is governed by Leads Advisors.

12.      FTC's course catalogue sets forth that FTC was purchased by Leads Advisors on April 1, 2009, and that Leads Advisors is owned by Leeds Equity.

13.      FTC, EduK, Leads Equity and Leads Advisors have common officers and owners. Therefore, actions that make money for one of the companies, including obtaining money from the government, make money for all of the companies, and the commonality of officers is but another example of how intertwined the companies are.

---

[2]   http://www.leedsequity.com/investments (last visited February 2, 2016).
[3]   http://www.leedsequity.com/investments/selected-former/eduk-group (last visited February 2, 2016).



    a.   Jeffrey Leads was a Director of FTC.   Jeffrey Leads is on the Board of Directors of EduK.  Jeffrey Leads is the President and co-founder of Leads Equity and Leads Advisors.

    b.   Guillermo Nigaglioni is a Director of FTC.  Guillermo Nigaglioni is on the Board of Directors of EduK.

    c.   David Rugierri is the President of FTC.  David Rugierri is on the Executive Team of EduK.

14.    FTC's policies, procedures and actions at issue in this action are mandated by EduK, and Leads Advisors.   Further, EduK's and Leads Advisor's policies, procedures and actions are mandated by Leads Equity.  Accordingly, all of the Defendants have knowledge of and are responsible for the submission of false claims to the government at issue in this action.

## VI.    <u>FALSIFICATION OF STUDENT INFORMATION</u>

15.    FTC is a for profit college that is one of EduK's member institutions.   EduK represents and warrants that all of its member institutes, including FTC, are accredited pursuant to the Accrediting Council for Independent Colleges and Schools (ACICS) and Accrediting Commission of Career Schools and Colleges (ACCSC), and that the ACICS and ACCSC are recognized by the U.S. Department of Education.[4]

16.    EduK's and FTC's target students are Latin Americans, most of who use government money in the form of student loans to pay for their enrollment.

17.    Up until June 2015, FTC had not been performing financially like the Defendants wanted.  In May 2015, the management group for FTC changed, including the appointment of a new Director of Admissions, Joanne Gimenez ("Director Gimenez").   Director Gimenez was tasked with rapidly increasing enrollment, and thus profit, at FTC's campuses.

---

[4]  http://www.edukgroup.com/accreditations (last visited February 2, 2016)



18.     Ms. Gimenez started working at the Cutler Bay campus in June 2015.  The Cutler Bay campus was a fairly new campus for FTC at that time.  After Ms. Gimenez started working there, its new student enrollment numbers jumped significantly.

19.     It is believed Defendants have a quota of the minimum number of new students that are to be enrolled at FTC each month.  Student enrollment is vital to Defendants because it drives profits, much of which originates with government student aid.

20.     In order to be qualified for government student financial aid, an applicant must be a U.S. citizen or eligible noncitizen, have a valid social security number, and show that the student has a high school diploma or a recognized equivalent such as a GED certification.

21.     FTC's 2016 course catalogue sets forth the following admissions requirements:

> "...The applicant must submit an attestation to the College wherein the applicant certifies he/she has graduated from high school or its equivalent, or other acceptable evidence of graduation from high school or its equivalent.  If required by the United States Department of Education for verification or other purposes, the applicant must provide the College with a copy of his/her high school diploma, GED certification, or GED transcript, official high school transcript that shows the date the diploma was awarded; or other acceptable evidence of high school completion...If the attestation and/or documentation is found to be false, untrue, or invalid, the student will be subject to immediate dismissal from the College, all credits earned will be invalidated, and all Title IV financial aid and any statute or institutional financial aid that was disbursed on the student's behalf must be returned to the appropriate source and the student will be responsible for payment to the College for any and all monies refunded.[5]"

22.     From at least June 2015 to the present, FTC falsified enrollment information so it could enroll non-qualified students; meaning those without a qualifying high school diploma, high school diploma equivalent ("GED"), FCAT scores and/or a valid social security number.  Once those non-qualified students are enrolled, those students receive financial aid money from

---

[5]   http://www.ftccollege.edu/wp-content/uploads/160208.pdf (last visited February 8, 2016).



the government, with the assistance of FTC's Financial Aid Office, to pay for their education. Those funds are paid to FTC, and then flow to FTC's owners (EduK, Leads Equity and Leads Advisors). FTC thus profits from enrolling as many students as possible, whether or not they will ultimately be dropped for not being qualified.

23.     If anyone finds out the students are not qualified, then they are dropped at their own peril. However, at that point, the money has already been used by the students and/or paid to FTC. The students are not in a position to repay that money as set forth in the course catalogue, and it is the government who is left with a debt that is uncollectable. That can be avoided if FTC does not enroll non-qualifying students.

24.     FTC's and EduK's goal is to get as many students enrolled that can pay tuition as possible, and it does everything it can to help prospective students get government money.

25.     FTC advertises its ability to get prospective students on its website and in its student handbook. For example, FTC's financial aid webpage sets forth[6]:

> Prospective students may secure an application to participate in Federal Student Aid programs from the Student Financial Aid department of the Institute or from a high school counselor. **The Institute will process the application electronically**…
>
> Financial Assistance in the form of loans and grants is available to qualified students. There are also scholarship opportunities. The College makes every possible effort to aid those students who need financial assistance at the same time they apply for admission to Florida Technical College.
>
> Students seeking financial assistance through any of the available programs should request information and appropriate financial aid counseling from FTC. **The Financial Aid Administrator will be pleased to assist in completing and submitting all forms to the appropriate agency/lender**. The student is responsible for providing accurate information…

---

[6]  www.ftccollege.edu/financial-aid.html (last visited February 2, 2016)



Accordingly, FTC and/or EduK are processing and submitting applications to the government that they know to be false in order to obtain payments in the form of financial aid. Students also have the option to apply for and submit their applications to the government on their own, but it is believed FTC and/or EduK submit the majority of the applications for the students themselves.

26.    FTC states that some of the government funds that it will submit applications and/or documentation for are those provided by Pell Grant, Federal Student Education Opportunity Grant, Florida Student Assistance Grant and Federal Work Study.

27.    The Federal Student Aid programs are authorized under Title IV of the Higher Education Act of 1965 ("Title IV"). 20 U.S.C. § 1070-1099. One of the purposes of Title IV is to provide Federal Pell Grants to all eligible students. 20 U.S.C. § 1070 (a)(1).

28.    To be eligible to receive Title IV funds, a school must enter into a program participation agreement with the Department of Education. In signing such an agreement, the school (in this case, FTC and/or EduK) promises to comply with all federal statutes applicable thereunder. Once students are qualified thereunder, they may apply to receive Title IV funds by completing the Free Application for Federal Student Aid.

29.    The government funds are typically paid by the government directly to FTC. Pursuant to Title IV:

> (a) Program authority and method of distribution: (1) For each fiscal year through fiscal year 2017, the Secretary shall pay to each eligible institution such sums as may be necessary to pay each eligible student (defined in accordance with section 1091 of this title) for each academic year during which that student is in attendance at an instituted of higher education, as an undergraduate, a Federal Pell Grant in the amount for which that student is eligible, as determined pursuant to subsection (b) of this section. Not less than 85 percent of such sums shall be advanced to eligible institutions prior to the start of each payment period and shall be based upon an amount requested

8

by the institution as needed to pay eligible students…
(emphasis added).

20 U.S.C. §1070 (a)(1).

30.     In order to be an "eligible student," the student must have a high school diploma

or GED and must have a social security number.  20 U.S.C. §1091.

31.     Students of FTC are often dropped after they take government money and pay the

school because they are not qualified.

32.     Relator reported that practice to Director Gimenez, as described in more detail

below, and an internal audit was finally conducted of at least the Cutler Bay campus of FTC.

After that audit, at least 14 current students were dropped for not having qualifying high school

diplomas.  A student who shall be referred to as M.R. can verify the purge.

33.     Another student, who shall be referred to as C.S., was from Cuba, and she was

enrolled even though she did not have a qualifying diploma, GED or FCAT score.   An

admissions representative reported the issue to Director Gimenez, and Director Gimenez told the

admissions representative to "keep it quiet."

34.     Relator was employed by FTC at the Cutler Bay campus in an administrative role

in the admissions office of FTC.   Relator's job responsibilities included verifying student

qualifications for enrollment and entering the information into FTC's student database called

CampusVue ("CVUE").   That task included verifying whether students had a qualifying high

school diploma, GED and FACT test scores.  Once that information was verified, Relator would

enroll the students.

35.     Ms. Gonzalez holds the same position in the admission office that Relator held.

Ms. Gonzalez's job also requires her to "verify" and enter the prospective student's information

in CVUE and enroll the students.



36.    Ms. Gonzalez and Relator discussed the issue about their supervisors asking them to enter false information in CVUE. Ms. Gonzalez told Relator that she was asked by Director Gimenez to falsify enrollment information in CVUE on multiple occasions. While Relator refused to enter incorrect information, Ms. Gonzalez gave into Director Gimenez's demands and entered the incorrect information into CVUE.

37.    Once qualifying information for a student is entered in CVUE, the student can be enrolled. Once the enrollment is complete, FTC can show the student as being enrolled and thus eligible to receive government student financial aid.

38.    FTC and EduK have policies and procedures in place to check to ensure that enrolling students meet the required standards to enroll in a college and receive government financial aid. However, FTC and EduK intentionally disregarded and continue to disregard those policies.

39.    For example, Ms. Astacio was given an employee handbook by the Compliance Department that requires the admissions staff to verify the high school diploma, GED and qualifying FCAT scores of prospective students. John Sticken, Director of Compliance, also gave a training seminar to Ms. Astacio and other employees about the enrollment procedures. The procedures include the requirement that people in Relator's position verify the student's high school diploma or GED. If it is a non-qualifying diploma or GED, then they are not supposed to enroll the student.

40.    Those policies were willfully disregarded, as evidenced by the various Directors', including Director Gimenez, instructions to admissions staff to enter false information or otherwise disregard knowingly incorrect information, and to enroll non-qualifying students.

ASELARA
TRIAL LAWYERS

### a.      Falsification of social security numbers

41.      Sometime in mid-June to early-July 2016, Ms. Gimenez asked Relator to input a false social security number in the student master sheet in CVUE at the very end of Ms. Relator's shift.  Relator refused to do so.  Director Gimenez then called Jay Akther ("Director Akther"), Director of Cutler Bay a/k/a the Miami campus, and Director Akther told Director Gimenez n to tell Relator to input the false social security number.  Immediately after that happened, Relator's shift ended, and she left without ever having entered a false social security number.

42.      That student's file was passed to the next admission staff member reporting for duty, Ms. Gonzalez.  Ms. Gonzalez entered the false social security number at the direction of Ms. Gimenez.  That was not the only incident of Ms. Gimenez asking other admissions staff to enter incorrect social security numbers.

43.      Sometime in mid-August 2016, Ms. Gonzalez sent a letter to Robert Caruso, Director of Security ("Director Caruso"), about Ms. Gimenez's request to enter false social security numbers.  Weeks later, Tony Wallace, Vice President of Admissions, came to the campus and had a *private* meeting with Ms. Gonzalez.  Mr. Wallace told Ms. Gonzalez to do whatever her supervisor (Director Gimenez) told her to do.

44.      Shortly after that "private" meeting with Ms. Gonzalez, Mr. Wallace had a *formal* meeting with the admissions staff, including Relator, Ms. Gonzalez, Debbie Diaz (Vice President of Financial Aid), LeAnn Brimmer (believed to be Vice President from Accounting) and Director Gimenez, during which he told them all that inputting false information into CVUE, such as false high school diploma information and false social security numbers, was their Director Gonzalez and the previous and subsequent actions of Ms. Gimenez.

     **b.**    **Falsification of High School Diploma and GED**

45.    A FTC login ID and password are needed to log into CVUE.  Depending on the position of the employees, the employees have varying degrees of access to CVUE.

46.    On or about August 1, 2015, Director Gimenez called Relator and asked her for her CVUE login and password so she can enter and/or change prospective student information regarding their qualifications for enrollment, including whether the prospective students had qualifying high school diplomas, GED and FCAT scores.

47.    Director Gimenez was Relator's supervisor.  Director Gimenez had higher CVUE access privileges than Ms. Astacio; meaning that Director Gimenez using her own login and password credentials could enter and change all of the data in CVUE that Relator could.

48.    Relator thought something was wrong about Ms. Gimenez's request because Director Gimenez did not need Relator's login and password to enter that information.  Director Gimenez could have entered that information under her own log in and password.

49.    On August 4, 2015, Relator sent an e-mail to Director Caruso reporting Ms. Gimenez's request to use her login and e-mail.

50.    On August 4, 2015, Director Caruso talked to Relator about her complaint. Director. Caruso told Ms. Astacio not to worry about it, and that he would talk to Dave Ruggieri, President of FTC (and on the EduK Executive Team), about it.

51.    Sometime in mid-August 2015, about two weeks after the Relator complaint about the conduct, Leslie Gonzalez from human resources at the Orlando campus spoke with Relator about her complaint.

MASE LARA
TRIAL LAWYERS

52.     Ms. Gonzalez told Ms. Astacio not to worry about the information being put into CVUE and the enrollment of the students because it was the students who were going to get in trouble from stealing from the government.

53.     Relator also contacted Ana Maria Lopez Guillen, Vice President of Human Resources for EduK, in Puerto Rico.  Relator told her that she spoke with Ms. Gonzalez about the problem.  Ms. Lopez Guillen said she would be at the Cutler Bay campus in January 2016, and she told Relator not to worry about it.

54.     After Relator spoke with Human Resources, Director Gimenez stopped asking Relator to falsify information.  Instead, Director Gimenez waited for Relator's shift to end, and then she asked Ms. Gonzalez to re-review files of students that Ms. Astacio had already reviewed and rejected for being non-qualified.  Director Gimenez would then make Ms. Gonzalez enter the information she wanted.

55.     None of the Directors said anything more to Relator about her Complaint through September, and then in mid-October 2015, Director Gimenez gave Relator her first written warning on October20, 2015.

56.     Relator never had any work complaints or formal write-ups for work performance before reporting the falsification of information to her supervisors.  Then, shortly thereafter, she gets the first written warning.  Relator did not agree with that warning, and she contacted the main Human Resources office – EduK – in Puerto Rico and spoke to Ms. Lopez Guillen, to say that she did not agree.  Relator refused to sign the written warning.

57.     The first written warning required Director Gimenez to have weekly performance meetings with Ms. Astacio.  Director Gimenez never had those meetings with Ms. Astacio.

58.     Then, on December 12, 2015, Director Gimenez gave Relator a second written warning, which placed Relator on a thirty day probationary period.  Thirty-one days later, FTC fired Relator.

**Count I**
**(§3729(A) against FTC)**

59.     This is a claim for False Claims pursuant to 31 U.S.C. §3729(A) against FTC.

60.     Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

61.     All conditions precedent to this claim have been satisfied, performed or waived.

62.     FTC knowingly presented, or caused to be presented, to the government a false or fraudulent claim for payment or approval.  FTC transmitted loan applications and other related documents to the government that contained false student information, including that the students meet the requirements to receive federal financial aid.  This was done by the Financial Aid Office at or about the time of the enrollment of the non-qualifying students.

63.     FTC acted with actual knowledge, deliberate ignorance and reckless disregard for the truthfulness of the claims and supporting documents it submitted to the government.  FTC knew it was falsely enrolling non-qualified students and that those students were using that enrollment to receive government funds.  To the extent students submitted false information to FTC, FTC exercised deliberate ignorance in verifying the information.  In some cases, the information submitted by students was not verified.  In other instances, even when the information was checked, FTC ignored any information that would make the students non-qualifying.

MASELARA
TRIAL LAWYERS

64.     Based on the demand made by FTC, the government paid money to FTC and/or the non-qualifying students that they should not have received based on the false information provided to the government by FTC in connection with the request for same.

65.     Relator believes this conduct is still ongoing.

WHEREFORE, Plaintiff demands damages from FTC, including its reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

### Count II
### (§3729(B) against FTC)

66.     This is a claim for False Claims pursuant to 31 U.S.C. §3729(B) against FTC.

67.     Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

68.     All conditions precedent to this claim have been satisfied, performed or waived.

69.     FTC knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.   FTC and/or the non-qualifying students transmitted loan applications and other related documents to the government that contained false student information, including that the students meet the requirements to receive federal financial aid.  This was done by the Financial Aid Office at or about the time of the enrollment of the non-qualifying students.

70.     FTC acted with actual knowledge, deliberate ignorance and reckless disregard for the truthfulness of the claims and supporting documents it submitted to the government.  FTC knew it was falsely enrolling non-qualified students and that those students were using that enrollment to receive government funds.  To the extent the students submitted false information to FTC, FTC exercised deliberate ignorance in verifying the information.  In some cases, the information submitted by students was not verified.  In other instances, even when the

information was checked, FTC ignored any information that would make the students non-qualifying.

71.    Relator believes this conduct is still ongoing.

72.    Based on the demand made by FTC, the government paid money to FTC and/or the non-qualifying students that they should not have received based on the false information provided to the government by FTC in connection with the request for same.

WHEREFORE, Plaintiff demands damages from FTC, including its reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

<u>**Count III**</u>
<u>**(False Certification by FTC- §3729(a)(2))**</u>

73.    This is a claim for false certification pursuant to 31 U.S.C. §3729(a)(b) against FTC.

74.    Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

75.    All conditions precedent to this claim have been satisfied, performed or waived.

76.    FTC falsely certified to the Department of Education in its program participation agreement that it will comply with federal law and regulations.  FTC does not comply with federal law and regulations when it improperly enrolls non-qualified students, submits their applications for federal funds and keeps them enrolled despite their non-qualified status.

77.    FTC knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.  FTC and/or the non-qualifying students transmitted loan applications and other related documents to the government that contained false student information, including that the students meet the requirements to receive federal financial

MASELARA
TRIAL LAWYERS

aid.  This was done by the Financial Aid Office at or about the time of the enrollment of the non-qualifying students.  Thus, making the representations material.

78.     FTC acted with actual knowledge, deliberate ignorance and reckless disregard for the truthfulness of the claims and supporting documents it submitted to the government.  FTC knew it was falsely enrolling non-qualified students and that those students were using that enrollment to receive government funds.  To the extent the students submitted false information to FTC, FTC exercised deliberate ignorance in verifying the information.  In some cases, the information submitted by students was not verified.  In other instances, even when the information was checked, FTC ignored any information that would make the students non-qualifying.

79.     Relator believes this conduct is still ongoing.

80.     Based on the demand made by FTC, the government paid money to FTC and/or the non-qualifying students that they should not have received based on the false information provided to the government by FTC in connection with the request for same.

WHEREFORE, Plaintiff demands damages from FTC, including its reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

### Count IV
### (§3729(A) against EduK)

81.     This is a claim for False Claims pursuant to 31 U.S.C. §3729(A) against FTC.

82.     Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

83.     All conditions precedent to this claim have been satisfied, performed or waived.

84.     EduK, by and through FTC, knowingly presented, or caused to be presented, to the government a false or fraudulent claim for payment or approval.  FTC transmitted loan

applications and other related documents to the government that contained false student information, including that the students meet the requirements to receive federal financial aid. This was done by the Financial Aid Office at or about the time of the enrollment of the non-qualifying students.

85.     EduK, by and through FTC, acted with actual knowledge, deliberate ignorance and reckless disregard for the truthfulness of the claims and supporting documents it submitted to the government.   FTC knew it was falsely enrolling non-qualified students and that those students were using that enrollment to receive government funds.   To the extent the students submitted false information to FTC, FTC exercised deliberate ignorance in verifying the information.   In some cases, the information submitted by students was not verified.   In other instances, even when the information was checked, FTC ignored any information that would make the students non-qualifying.

86.     It is believed EduK exercises sufficient control over FTC that EduK is really the party submitting false claims to the government.     EduK acted in connection with the acts complained of herein, investigated same, and ultimately did nothing to stop the submission of false claims.   Further, EduK received and continues to receive a financial benefit from the payment of the false claims.

87.     Based on the demand made by EduK, by and through FTC, the government paid money to FTC and/or the non-qualifying students that they should not have received based on the false information provided to the government by FTC in connection with the request for same.

88.     Ms. Relator believes this conduct is still ongoing.

WHEREFORE, Plaintiff demands damages from EduK, including its reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.



## Count V
### (§3729(B) against EduK)

89.     This is a claim for False Claims pursuant to §3729(B) against EduK.

90.     Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

91.     All conditions precedent to this claim have been satisfied, performed or waived.

92.     EduK knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.  EduK and/or the non-qualifying students transmitted loan applications and other related documents to the government that contained false student information, including that the students meet the requirements to receive federal financial aid.  This was done by the EduK (either on its own or through its control of FTC's Financial Aid Office) at or about the time of the enrollment of the non-qualifying students.

93.     EduK acted with actual knowledge, deliberate ignorance and reckless disregard for the truthfulness of the claims and supporting documents it submitted to the government. EduK knew it (or FTC under its control) was enrolling non-qualified students and that those students were using that enrollment to receive government funds.  To the extent the students submitted false information to EduK and/or FTC, EduK exercised deliberate ignorance in verifying the information.  In some cases, the information submitted by students was not verified.  In other instances, even when the information was checked, EduK ignored any information that would make the students non-qualifying.

94.     Relator believes this conduct is still ongoing.

95.     Based on the demand made by EduK (or FTC under its control), the government paid money to FTC and/or the non-qualifying students that they should not have received based

on the false information provided to the government by EduK (or FTC under its control) in connection with the request for same.

WHEREFORE, Plaintiff demands damages from EduK, including its reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

### Count VI
### (§3730(h) against FTC)

96.     This is a claim for False Claims pursuant to 31 U.S.C. §3730(h) against FTC.

97.     Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

98.     All conditions precedent to this claim have been satisfied, performed or waived.

99.     Relator was discriminated against by FTC, including being threatened, harassed and fired from her employment, because of her lawful acts to stop the violations set forth herein.

100.    FTC's discriminatory conduct caused Relator to have to obtain legal counsel to assert this claim on her behalf.

101.    Relator was damaged by FTC's discriminatory conduct.

WHEREFORE, Relator demands all damages from FTC provided for by 31 U.S.C. §3730(h), including her reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

### Count VII
### (§3730(h) against EduK)

102.    This is a claim for False Claims pursuant to 31 U.S.C. §3730(h) against EduK.

103.    Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

104.    All conditions precedent to this claim have been satisfied, performed or waived.

MASELARA
TRIAL LAWYERS

105.    Relator was discriminated against by EduK (who either provided human resources services for FTC or controlled FTC's human resources), including being threatened, harassed and fired from her employment, because of her lawful acts to stop the violations set forth herein.

106.    EduK's discriminatory conduct caused Relator to have to obtain legal counsel to assert this claim on her behalf.

107.    Relator was damaged by EduK's discriminatory conduct.

WHEREFORE, Relator demands all damages from EduK provided for by 31 U.S.C. §3730(h), including her reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

## Count VIII
### (§448.102, Fla. Stat. against FTC)

108.    This is a claim for violation of §448.102 against FTC.

109.    Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

110.    All conditions precedent to this claim have been satisfied, performed or waived.

111.    FTC took retaliatory personnel action against Relator objected to, and refused to participate in, an activity, policy and practice of FTC (and EduK) that was in violation of the law, rule and/or regulation.

112.    Relator notified FTC and EduK of their objectionable actions described herein.

113.    Relator was given written warnings and ultimately terminated because of her refusal and objection to FTC's actions described herein.

114.    FTC's conduct caused Relator to have to obtain legal counsel to assert this claim on her behalf.

115.    Relator was damaged by FTC's conduct.



WHEREFORE, Relator demands all damages from FTC provided for by Ch. 448, Fla. Stat., including her reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

<u>**Count IX**</u>
<u>**(§448.102, Fla. Stat. against EduK)**</u>

116.    This is a claim for violation of §448.102 against EduK.

117.    Plaintiff incorporates and re-alleges the allegations set forth in paragraphs 1 through 58 of the General Allegations.

118.    All conditions precedent to this claim have been satisfied, performed or waived.

119.    EduK took retaliatory personnel action against Relator objected to, and refused to participate in, an activity, policy and practice of EduK (and FTC) that was in violation of the law, rule and/or regulation.

120.    Relator notified FTC and EduK of their objectionable actions described herein.

121.    Relator was given written warnings and ultimately terminated because of her refusal and objection to FTC's actions described herein.

122.    EduK's conduct caused Relator to have to obtain legal counsel to assert this claim on her behalf.

123.    Relator was damaged by EduK's conduct.

WHEREFORE, Relator demands all damages from EduK provided for by Ch. 448, Fla. Stat., including her reasonable attorneys' fees and costs, and all other relief the Court deems just and proper.

MASELARA
TRIAL LAWYERS

## JURY TRIAL DEMAND

Relator demands a trial by jury on all claims so triable.

DATED March 8, 2016.

Respectfully submitted,

MASE LARA, P.A.
*For Relator and Plaintiff*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:  (305) 377-3770
Facsimile:  (305) 377-0080

By: _____
     RICHARD LARA
     Florida Bar No. 987492
     rlara@maselara.com
     WILLIAM R. SEITZ
     Florida Bar No.: 73928
     wseitz@maselara.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2016, that the foregoing document will be served on the United States Attorneys identified on the attached Service List via Certified U.S. Mail (return receipt requested).

By: _____
WILLIAM SEITZ

MASE LARA
TRIAL LAWYERS

### SERVICE LIST

***United States of America ex rel. Laurie Astacio v. Florida Technical College, Inc.***
***and EduK Group, Inc.***
**United States District Court, Southern District of Florida**

Wilfredo A. Ferrer, Esq.
United States Attorney, Southern District of Florida
United States Department of Justice
99 N.E. 4th Street
Miami, FL 33132

Loretta E. Lynch, Esq.
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

18888//13

MASELARA
TRIAL LAWYERS